# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-1290

_____

| | | |
|---|---|---|
| Robert R. Wisdom; Nancy J. Wisdom, | * * * | |
| Appellants, | * * | Appeal from the United States District Court for the |
| v. | * * | Eastern District of Missouri. |
| First Midwest Bank, of Poplar Bluff; Jerry F. McLane; Jerry Dorton; Joey McLane, | * * * * | |
| Appellees. | * * | |

_____

Submitted: September 22, 1998
Filed: January 11, 1999

_____

Before HANSEN, BRIGHT, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

HANSEN, Circuit Judge.

Robert and Nancy Wisdom (the Wisdoms) brought this Racketeer Influenced and Corrupt Organizations Act (RICO) claim against First Midwest Bank and three of its officers. They also asserted federal law claims for violation of the Truth In Lending Act, mail fraud, wire fraud, extortion, and pendant state law claims of common law

fraud and deceit. The district court dismissed the claims for failure to state a claim upon which relief could be granted, from which the Wisdoms now appeal. We affirm in part, vacate in part, and remand to the district court for further proceedings.

## I.

In reviewing a motion to dismiss for failure to state a claim, we view the facts in the light most favorable to the claimant, taking the facts as found in the complaint as true. See Duffy v. Landberg, 133 F.3d 1120, 1122 (8th Cir.), cert. denied, 119 S. Ct. 62 (1998). In May 1989, the Wisdoms borrowed $283,000 (Loan I) from First Midwest Bank to purchase Robert R. Wisdom Oil Co., Inc., using the proceeds to pay off the company's creditors. The loan was contingent on them also taking another $120,000 loan (Loan II), which they were unaware of until closing, on property foreclosed by a related bank, Carter County Bank. The Wisdoms allege it was too late to back out of Loan I because representatives of the creditors to be paid off were present at the closing.

Defendant Jerry McLane is principal owner and president of First Midwest Bank and principal owner of Carter County Bank. Defendant Joey McLane was also president of First Midwest Bank at some time and dealt with the Wisdoms concerning their loans. Plaintiffs defaulted on Loan I in May 1991, and entered into a settlement agreement for $257,825 with defendant Jerry Dorton, a vice-president of First Midwest Bank. Portions of the payments meant for the Loan I settlement were credited to Loan II between May 1991 and January 1992.

In March 1992, when the Wisdoms sought to pay off the then balance of Loan I of $1,473, Dorton strongly suggested that they leave the loan on the books to make it harder for other creditors to attach the property securing the loan. In July, Dorton mailed a letter to the Wisdoms' attorney, indicating that both notes could be released for $15,000. In August 1992, the bank mailed a notice of default, stating a balance due

on Loan I of $51,375, and threatened foreclosure. Plaintiffs paid an additional $28,000 between September and December 1992 and arranged for their associate to assume the then $26,000 balance of Loan I. Because Loan II was still outstanding, defendants refused to release any collateral securing Loan II. Much of the collateral was subsequently stolen and vandalized.

The Wisdoms filed a pro se complaint alleging that the defendants participated in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) & (d) (1996), by committing various acts of mail fraud, wire fraud, extortion, and Truth In Lending violations in connection with the collection of the two loans. The Wisdoms also alleged that the defendants violated the Truth In Lending Act, 15 U.S.C. §§ 1601-67f (1996).[1] The district court read the complaint as alleging implied rights of action under 18 U.S.C. § 1341 (1996) (mail fraud), 18 U.S.C. § 1343 (1996) (wire fraud), and 18 U.S.C. § 1951 (1996) (extortion). Finally, the Wisdoms brought pendant state claims against the defendants based on common law fraud and deceit. The defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). The Wisdoms filed a traverse to the motion to dismiss, requesting that the court allow them to amend their complaint if it was indeed defective. The district court dismissed the complaint in its entirety, without addressing the Wisdoms' argument that they should be allowed to amend their complaint. This appeal followed.

## II.

We review the dismissal of a complaint for failure to state a claim upon which relief could be granted de novo, affirming the district court if there is no provable set

---

[1]The Wisdoms concede that their complaint failed to state a claim under the Truth In Lending Act because the transaction involved a commercial loan to which Truth In Lending does not apply. See 15 U.S.C. § 1603(1).

3

of facts that would entitle the plaintiff to the requested relief. See WMX Tech., Inc. v. Gasconade County, Mo., 105 F.3d 1195, 1198 (8th Cir. 1997). In so doing, we construe the complaint liberally, taking all factual allegations as true. Id. It is well settled that "we may affirm the district court's judgment on any basis supported by the record." Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998) (internal quotations and citations omitted).

## A. RICO Claim

Section 1962(c) of the RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Subsection (d) criminalizes a conspiracy to violate one of the other subsections of § 1962. Section 1964(c) allows a private party, who has been injured in his property from a RICO violation, to sue for damages. To state a RICO claim, the Wisdoms must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985) (footnote omitted).

The pattern element "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5); see also H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 237-38 (1989). However, a mere allegation of two or more acts is insufficient to state a RICO claim; the predicate acts must be related and must "amount to or pose a threat of continued criminal activity." See United Healthcare Corp. v. American Trade Ins. Co., Ltd., 88 F.3d 563, 571 (8th Cir. 1996) (quoting H.J. Inc., 492 U.S. at 239). The relationship prong of the pattern element is satisfied if the predicate acts "'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" Handeen v. LeMaire, 112 F.3d 1339, 1353 (8th Cir. 1997) (quoting H.J. Inc., 492 U.S. at 240). The second prong, continuity, can be either closed-ended or open-ended.

4

Closed-ended continuity involves "a series of related predicates extending over a substantial period of time;" open-ended continuity involves acts which, by their nature, threaten repetition into the future. See H.J. Inc., 492 U.S. at 241-42. Multiple predicates within a single scheme are encompassed within the RICO statute as long as the relationship and continuity elements are met. See id. at 237; Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank, 934 F.2d 976, 981 (8th Cir. 1991).

In defining "racketeering activity," § 1961(1) lists the predicate acts that will support a RICO claim. The Wisdoms' pro se complaint alleges that the defendants' racketeering activity included numerous instances of mail fraud, wire fraud, extortion, and violations of Truth In Lending. Acts indictable under the mail fraud, wire fraud, and extortion statutes are among the enumerated predicate acts. However, Truth In Lending violations are not on the list. See 18 U.S.C. § 1961(1). The Wisdoms wish to replead the acts surrounding First Midwest Bank's requirement that they accept the second loan, originally pled as a violation of Truth In Lending, as a violation of the Bank Holding Company Act, 12 U.S.C. § 1972 (1996). We address this argument later, but note for now that a violation of that statute similarly is not a predicate act for purposes of establishing a RICO claim. See 18 U.S.C. § 1961(1). Thus, we look only to the alleged predicate acts of mail fraud, wire fraud, and extortion to determine whether the pattern requirement has been met.

When pled as RICO predicate acts, mail and wire fraud require a showing of: 1) a plan or scheme to defraud, 2) intent to defraud, 3) reasonable foreseeability that the mail or wires will be used, and 4) actual use of the mail or wires to further the scheme. See Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1069 & n.6 (8th Cir. 1995) (noting that a RICO claim does not require proof of misrepresentation of fact). Extortion is defined as "obtaining . . . property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

5

The Wisdoms allege that the defendants committed mail fraud in relation to the settlement agreement reached in May 1991. The Wisdoms do not dispute that they were delinquent on the loan or that the amount of the settlement correlated to the unpaid balance of the loan. They only claim that the conditions of the settlement were unfair. The bank had a right to attempt to collect on the delinquent loan, including entering into the settlement agreement. We agree with the district court that the settlement was nothing more than hardball financing; it did not rise to the level of fraud. See, e.g., Lambert Plumbing, 934 F.2d at 981 (finding that a bank's acts of protecting itself in light of a problem loan are not indicative of racketeering activity).

Though mail fraud can be a predicate act, mailings are insufficient to establish the continuity factor unless they contain misrepresentations themselves. The court must look to the underlying scheme to defraud. See Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp., 986 F.2d 1208, 1215 (8th Cir. 1993) (refusing to consider a letter containing no indications of fraud as the beginning mail fraud predicate act); Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1414 (3d Cir.) ("[T]he continuity question should not be affected by the fact that a particular fraudulent scheme involved numerous otherwise 'innocent' mailings . . . ."), cert. denied, 501 U.S. 1222 (1991). Because the May 1991 settlement agreement did not amount to a fraudulent scheme, the mailing of the agreement is not a predicate act that can be used to establish a pattern.

The only acts that could be construed to involve a fraudulent scheme surround the attempts to collect more than the agreed balance of the loans. Reading the complaint in the light most favorable to the Wisdoms, Dorton agreed to accept $15,000 in full payment of both loans in July 1992. However, later in August, First Midwest Bank mailed a default notice claiming a balance due of $51,375 and threatened foreclosure in the event of nonpayment. Facing foreclosure, the Wisdoms paid, and caused their associates to pay, an additional $54,000 between September and December 1992.

6

Assuming these collection activities satisfy the initial showing of an underlying scheme to defraud, the predicate acts of mail and wire fraud occurred between July and December 1992. This six-month period is too short to satisfy the closed-ended analysis of the pattern requirement. See Primary Care, 986 F.2d at 1215 (holding that eleven months is insufficient to satisfy the closed-ended continuity requirement and noting that other Circuits consistently hold that schemes less than one year are too short). Assuming, arguendo, that the March 1992 "suggestion" to keep the loan with First Midwest Bank could amount to extortion, the predicate acts would still only cover a ten-month period, which likewise is too short to satisfy the closed-ended continuity requirement. Finally, there are no allegations that can be construed to show on-going criminal activity. We hold that the Wisdoms have failed to meet the pattern element and, thus, their RICO claim must fail. Consequently, we need not address the other RICO elements.

## B. Implied Right of Action Under Criminal Statutes

A criminal statute may provide an implied private right of action if Congress so intended in enacting the criminal statute. See Thompson v. Thompson, 484 U.S. 174, 179 (1988) (holding that a private remedy will not be implied unless legislative intent can be inferred from statutory language or elsewhere). Whether 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and 1951 (extortion) provide private rights of action are questions of first impression in the Eighth Circuit. We consider four factors in determining whether a private right of action exists: 1) whether the plaintiff is a member of the class for whose benefit the statute was enacted; 2) whether Congress intended, explicitly or implicitly, to create such a remedy; 3) whether a private remedy is consistent with the underlying legislative scheme; and 4) whether a private right based on a federal statute would interfere with an area relegated to state law. See Cort v. Ash, 422 U.S. 66, 78 (1975). Congressional intent is the final touchstone and the Cort factors have been limited to providing evidence of Congress's intention to create a private right of action. See Thompson, 484 U.S. at 189 (Scalia, J., concurring)

(indicating Cort was essentially overruled by Touche Ross & Co. v. Redington, 442 U.S. 560 (1979)); Furrer v. Brown, 62 F.3d 1092, 1100 (8th Cir. 1995) (noting that Cort is only a guide to determining Congressional intent, citing Thompson and Touche Ross), cert. denied, 517 U.S. 1167 (1996).

The Supreme Court reviewed the legislative history of the mail fraud statute in assessing the breadth of criminal activity within the statute's scope. See McNally v. United States, 483 U.S. 350, 356-57 (1987). The Supreme Court concluded that the sparse legislative history "indicates that the original impetus behind the mail fraud statute was to protect the people from schemes to deprive them of their money or property." Id. at 356. It is not enough, however, that a statute intends to benefit a class of persons. See Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 17-18 (1979) (stating that although Congress clearly intended to benefit the plaintiff by placing fiduciary duties on the defendant, whether those duties were enforceable by a private action is another question). Congressional intent is the determining factor and is not merely to be weighed against the other Cort factors. See Thompson, 484 U.S. at 179. Though the legislative history according to McNally is not inconsistent with a private right of action, consistency is not enough. There is no clear indication that Congress intended to create such a right.

Other courts that have considered this issue have found no private right of action. See Ryan v. Ohio Edison Co., 611 F.2d 1170, 1178 (6th Cir. 1979) (finding the scant legislative history of the mail fraud statute to indicate an intent to punish dealers of fraudulent devices for using the United States mails but not an intent to create a private right of action); Bell v. Health-Mor, Inc., 549 F.2d 342, 346 (5th Cir. 1977) (finding no implied private remedy under mail fraud statute); Napper v. Anderson, Henley, Shields, Bradford & Pritchart, 500 F.2d 634, 636 (5th Cir. 1974) (same under wire fraud statute), cert. denied, 423 U.S. 837 (1975). Though a bare criminal statute does not necessarily preclude an implied private right of action, there should "at least [be] a statutory basis for inferring that a civil cause of action of some sort lay in favor of

someone." <u>Cort</u>, 422 U.S. at 79; <u>see</u> <u>also</u> <u>Ryan</u>, 611 F.2d at 1178. Neither the mail fraud statute nor its legislative history provides for any remedy other than criminal sanctions. Thus, we agree with the Fifth and Sixth Circuits and hold that Congress did not intend to create a private right of action in enacting either the mail or wire fraud statutes.

Though fewer courts have addressed the issue of a private right of action under the extortion statute, those that have have found it to be a bare criminal statute with no support for a private cause of action in the legislative history. <u>See</u> <u>American Computer Trust Leasing v. Jack Farrell Implement Co.</u>, 763 F. Supp. 1473, 1497 (D. Minn. 1991) (finding no private right of action under extortion statute which is "purely criminal in nature"), <u>aff'd and remanded</u>, <u>American Computer Trust Leasing v. Boerboom Int'l, Inc.</u>, 967 F.2d 1208, 1214 (8th Cir.) ("[W]e affirm the district court's order in all respects."), <u>cert. denied</u>, 506 U.S. 956 (1992); <u>Peterson v. Philadelphia Stock Exch.</u>, 717 F. Supp. 332, 336 (E.D. Pa. 1989) (finding no legislative intent from the statute or its legislative history to imply a private cause of action under 18 U.S.C. § 1951); <u>Creech v. Federal Land Bank of Wichita</u>, 647 F. Supp. 1097, 1099 (D. Colo. 1986) (no private right of action under extortion statute). We agree that neither the statutory language of 18 U.S.C. § 1951 nor its legislative history reflect an intent by Congress to create a private right of action. We hold, therefore, that the district court correctly dismissed the Wisdoms' claims based on a private right of action under 18 U.S.C. §§ 1431, 1434, and 1951.

## C.    Amended Complaint

The Wisdoms filed a traverse to the defendants' motion to dismiss, arguing that they should be allowed to amend their complaint to remedy its shortcomings. Though the Wisdoms did not file a formal motion to amend their complaint, that failure is not necessarily fatal as long as they show a willingness to amend the complaint. <u>See</u> <u>Ferguson v. Cape Girardeau County</u>, 88 F.3d 647, 651 (8th Cir. 1996). Generally, the

denial of a request to amend a complaint is reviewed by this court for an abuse of discretion.  See Frey v. City of Herculaneum, 44 F.3d 667, 672 (8th Cir. 1995). Because the district court's order is silent as to whether the request was even considered, we are unable to ascertain whether the district court denied the request or ignored it.  Leave to amend a complaint should be freely given to promote justice. Fed. R. Civ. P. 15(a). We generally prefer to decide claims on their merits instead of on their pleadings.  See Ferguson, 88 F.3d at 650; Bank v. Pitt, 928 F.2d 1108, 1112 n.6 (11th Cir. 1991).  In light of the foregoing, parties should usually be given at least one chance to amend their complaint.  See Bank, 928 F.2d at 1112.  However, parties should not be allowed to amend their complaint without showing how the complaint could be amended to save the meritless claim.  See Ferguson, 88 F.3d at 651.

The Wisdoms allege that the defendants violated the anti-tying provision of the Bank Holding Company Act, 12 U.S.C. § 1972, by requiring them to accept Loan II from Carter County Bank before First Midwest Bank would grant Loan I.  These facts may be able to support a claim under that Act.  See § 1972(1)(B) ("A bank shall not in any manner extend credit . . . on the condition or requirement . . . that the customer shall obtain some additional credit . . . from a bank holding company of such bank, or from any other subsidiary of such bank holding company.").  Because we are unsure whether the district court addressed the Wisdoms' request to amend their complaint, we remand this issue to the district court for a ruling on the request to amend the complaint regarding the Bank Holding Company Act.

The district court dismissed the pendant state fraud claim for failure to plead the claim with particularity as required by Fed. R. Civ. P. 9(b) and for failure to allege the elements of fraud under Missouri common law.  We likewise remand the request to amend the common law fraud claim for a ruling by the district court.  In light of our opinion, the Wisdoms have failed to show how an amendment to their RICO claim

10

could save that claim;[2] thus, the district court need not entertain the request to amend the RICO claim.

## III.

For the foregoing reasons, we affirm the district court as to the RICO claim, the mail and wire fraud claims, and the extortion claim. We vacate the district court's dismissal of the common law fraud claim and remand to the district court for consideration of the Wisdoms' request to amend their complaint as to the Bank Holding Company Act claim and the Missouri common law fraud claim.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

---

[2]The Wisdoms argue that they should be allowed to replead the complaint to properly plead the "enterprise" and "racketeering activity" elements of their RICO claim. Because we find that they fail the "pattern" element, such amendments would be futile.

11