**WALKER MANUFACTURING, INC., Plaintiff,**

v.

**HOFFMANN, INC., an Iowa Corporation; Larry Emmert; Marty Sixt; and Jan Rule d/b/a J.R. Sales and Advantage Sprayers; Defendants.**

**No. 00–103 MJM.**

United States District Court, N.D. Iowa, Cedar Rapids Division.

April 25, 2001.

Mark L. Zaiger, Kevin J. Caster, Shuttleworth & Ingersoll, Cedar Rapids, IA, for plaintiff.

Michael L. Noyes, Lane & Waterman, Davenport, IA, Brian J. Laurenzo, Michael C. Gilchrist, James R. Quilty, Dorsey & Whitney, Des Moines, IA, for Hoffman, Inc.

Michael L. Noyes, Lane & Waterman, Davenport, IA, for Larry Emmert.

Marty Sixt, Iowa City, IA, pro se.

Michael McDonough, Moyer Bergman, Cedar Rapids, IA, Gregory Lederer, Simmons Perrine Albright Ellwood, Cedar Rapids, IA, for Jan Rule, dba J.R. Sales and Advantage Sprayers.

## OPINION and ORDER

MELLOY, District Judge.

In this action, the plaintiff, Walker Manufacturing, Inc., asserts federal copyright, trade dress and racketeering claims, along with related state claims, against the above-named defendants arising from defendant Hoffmann, Inc.'s manufacture and marketing of corn crop sprayers. Currently before the court is a motion by defendants Hoffmann and Larry Emmert to dismiss count 1 of the plaintiff's Amended Complaint alleging claims under the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. § 1962(c), and the Iowa Ongoing Criminal Conduct Act (IOCCA), § 706A.2(1)(c) of the Iowa Code (IC). Because the court finds that the plaintiff cannot establish the continuity element required under RICO and IC § 706A.2(1)(c), the defendants' motion to dismiss is granted.

### STANDARD FOR MOTION TO DISMISS

In addressing a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6), a court must presume that the factual allegations in the complaint are true and accord all reasonable inferences from those facts to the plaintiff. *See Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Midwestern Machinery v. Northwest Airlines, Inc.*, 167 F.3d 439, 441 (8th Cir.1999); *Valiant–Bey v. Morris*, 829 F.2d 1441, 1443 (8th Cir.1987). The motion should be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80, (1957) (as quoted in *Valiant–Bey*, 829 F.2d at 1443); *accord, Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995).

### FACTS

The plaintiff, Walker Manufacturing, is in the business of producing self-propelled, high-clearance crop sprayers. (Amended Complaint, ¶ 8). In May, 2000, Walker Manufacturing purchased certain assets of a company known as RJ Manufacturing, Inc., including numerous trademarks associated with the manufacture of crop sprayers ("the Walker trademarks") and the goodwill associated with those trademarks. (Id., ¶¶ 5, 8 and 9).

Defendant Hoffmann is an Iowa Corporation with its principal place of business in Muscatine, Iowa. (Id., ¶ 2). Defendant Emmert is the president and principal owner of Hoffmann. (Id., ¶ 3).

Before Walker Manufacturing's acquisition, RJ Manufacturing was the owner of the Walker trademarks, and had produced and sold self-propelled crop sprayers under the Walker trademarks since 1995. (Id., ¶¶ 8 and 9). At some point prior to its sale of assets, RJ Manufacturing gave proprietary and confidential drawings to Hoffmann for the limited purpose of producing components for RJ Manufacturing's self-propelled crop sprayers. (Id., ¶ 10).

In conjunction with Hoffmann's alleged misappropration and misuse of those drawings, Walker Manufacturing brought suit in this court asserting Lanham Act violations, copyright infringement, misappropriation of trade secrets, unfair competition and breach of contract. (Doc. no. 1). Following a hearing, the court granted Walker Manufacturing's request for a temporary injunction against Hoffmann. (Doc. nos. 30 and 33). Approximately one month later, Walker Manufacturing filed an amended complaint adding, in count 1, alleged violations of RICO and the IOCCA. (Doc. no. 43).

Along with Hoffmann and Emmert, count 1 of the amended complaint names two additional defendants: Marty Sixt, who worked for RJ Manufacturing from October 1996 to December 20, 1999, and then worked for Hoffmann from January 10, 2000 through at least July 18, 2000 (id., ¶ 6); and Jan Rule, d/b/a as J.R. Sales and Advantage Sprayers, who has an exclusive distribution agreement with Hoffmann for the Hoffmann crop sprayers. (Id., ¶ 14). Walker Manufacturing asserts that since at least January 10, 2000, all named defendants conducted or participated in a scheme to manufacture and market a sprayer using Walker Manufacturing trade secrets and to prevent Walker Manufacturing from manufacturing and marketing any competing sprayers. (Id., ¶¶ 15 and 16).

In support of its claim, Walker Manufacturing points to numerous actions by the defendants allegedly done in furtherance of the scheme, including, *inter alia:*

— mail and wire fraud violations from February 2, 2000 through late spring 2000, in conjunction with Hoffmann's wrongful retention of fixtures provided to Hoffmann by RJ Manufacturing for the limited purpose of manufacturing specific crop sprayer components, (Id., ¶ 17);

— mail and wire fraud violations in April 2000 in conjunction with false statements made in a patent application for an invention which allegedly belonged to Walker Manufacturing, (Id., ¶ 18);

— mail and wire fraud violations since at least June 27, 2000, in conjunction with false statements made by Emmert and Rule in a fax campaign to former Walker Manufacturing customers, (Id., ¶ 19);

— violation of IC § 714.1(2)(1), theft in the first degree, and IC § 706.1, conspiracy, from January 10 to June 16, 2000, in conjunction with Hoffmann's and Sixt's misappropriation of diagrams owned by Walker Manufacturing and containing trade secrets relating to the Walker sprayers, (Id., ¶ 20).

Walker Manufacturing contends that the defendants' actions have caused and continue to cause damages to Walker Manufacturing in the form of loss of manufacturing facility, loss of valuable trade secrets, loss of future profits, and loss of good will. (Id., ¶ 28).

## DISCUSSION

Count I asserts a violation of RICO and the corresponding Iowa law, IC § 706A.2(1)(c) (IOCCA). To prove a RICO violation, the plaintiff must show: (1) the existence of an enterprise; (2) the defendant's association with the enterprise; (3) the defendant's participation in predicate acts of racketeering, as listed in 18 U.S.C. § 1961(1); (4) the defendant's actions constitute a pattern of racketeering activity; and (5) the defendant's actions proximately caused injury to the plaintiff's business or property. *United HealthCare Corp. v. American Trade Ins. Co.*, 88 F.3d 563, 570 (8th Cir.1996) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). To prove an IOCCA violation, the plaintiff must show that a defendant knowingly

conducted the affairs of, or knowingly participated in, an enterprise engaged in specified unlawful activity. *See* IC § 706A.2(1)(c). "Specified unlawful activity" is defined as "any act, including any preparatory or completed offense, committed for financial gain on a continuing basis, that is punishable as an indictable offense under the laws of the state in which it occurred and under the laws of this state." IC § 706A.1(5).

Defendants Hoffmann and Emmert challenge the adequacy of count 1 of the amended complaint on two grounds: (1) that the plaintiff, in alleging predicate acts under RICO, failed to plead with particularity "the circumstances constituting fraud," as required by Federal Rule of Civil Procedure 9(b); and (2) that the plaintiff failed to plead a "pattern of racketeering activity" as required under RICO and IC § 706A.2(1)(c). Because the court agrees that the plaintiff's complaint fails on the latter grounds, it is unnecessary to reach the defendants' alternative particularity challenge.

*Pattern of racketeering*

 RICO requires the pleading and proof that the defendants engaged in a "pattern of racketeering activity." *See* 18 U.S.C. § 1962(c). To do so, the plaintiff must show at least two related predicate acts which amount to or pose a threat of continued criminal activity. *See* 18 U.S.C. § 1961(5). To be related predicate acts, they must not be isolated events and must share distinguishing characteristics. *See United HealthCare Corp.*, 88 F.3d at 571–72. To show continued criminal activity, they can be either closed-ended or open-ended. *See id.* (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). The Supreme Court described the distinction between closed- and open-ended continuity as follows:

A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated.

*H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. 2893 (citing S.Rep. No. 91–617, at 158).

A. Closed-ended continuity

██ Paragraph 16 of count 1 states that "[s]ince at least January 10, 2000, [the defendants] have been engaged in a scheme to defraud [the plaintiff] and have used the United States Postal Service and wire communications used in interstate commerce in furtherance of the scheme . . . to manufacture and market a sprayer using Walker trade secrets, and to prevent Walker from manufacturing and marketing any competing sprayers." (Amended Complaint, ¶ 16). On August 11, 2000, this court entered a temporary injunction order against Hoffmann "prohibiting [it] from selling, marketing, or displaying to any third party its self-propelled high clearance agricultural sprayer." Orders, dated August 11, 2000, at p. 3, and August 28, 2000, at p. 21 (reaffirming issuance of injunction). Thus, granting all supportable inferences from the factual allegations of the complaint in the plaintiff's favor, the period in which the alleged predicate acts occurred is, at most, eight months. In *Wisdom v. First Midwest Bank*, 167 F.3d 402 (8th Cir.1999), the Eighth Circuit found a six-month period too short to satisfy the closed-ended analysis of the pattern requirement. *See id.* at 407 (citing *Pri-*

*mary Care Investors, Seven, Inc. v. PHP Healthcare Corp.*, 986 F.2d 1208, 1215 (8th Cir.1993), holding eleven months insufficient to satisfy the closed-ended continuity requirement and noting that other Circuits consistently hold that schemes less than one year are too short). The *Wisdom* court further commented that assuming, arguendo, that an earlier alleged incident could be considered a predicate act, "the predicate acts would still only cover a ten-month period, which likewise is too short to satisfy the closed-ended continuity requirement." *Id.* It follows, therefore, that the eight month period at issue in this case is also too short.[1]

**B. Open-ended continuity**

■ To demonstrate open-ended continuity, the plaintiff may show predicate acts which "by [their] nature project[ ] into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 241, 109 S.Ct. 2893, *quoted in Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank*, 934 F.2d 976, 980 (8th Cir.1991). Open-ended continuity will be established if the predicate acts themselves involve an actual threat of long-term racketeering activity, either implicit or explicit. *See id.* at 242–43, 109 S.Ct. 2893.

To illustrate this principle, the Supreme Court offered the following example: "Suppose a hoodlum were to sell 'insurance' to a neighborhood's storekeepers to cover them against breakage of their windows, telling his victims he would be reappearing each month to collect the 'premium' that would continue their 'coverage.'" *Id.* at 242, 109 S.Ct. 2893.

■ Walker Manufacturing asserts that the threat of future use of its misappropriated trade secrets is sufficient to bring this case within the ambit of the Supreme Court's insurance example. Assuming that the predicate acts alleged by Walker Manufacturing were sufficiently pled, the court agrees in principle with the proposed analogy. However, in this case, issuance of the temporary injunction on August 11, 2000, removed any threat of repetition of the predicate acts alleged in count 1 and dissipated the potential for furtherance of the alleged scheme through those acts. In other words, by enjoining Hoffmann from selling, marketing, or displaying its self-propelled high clearance agricultural sprayer, the court effectively truncated any possibility that the defendants could, in the future, "reappear to collect the premiums" from an earlier predicate act.[2]

---

1. The court finds no merit in the plaintiff's proposition that issuance of the temporary injunction did not sufficiently close the period for the closed-ended continuity analysis. By enjoining Hoffmann and its agents from selling, marketing or displaying its corn sprayer the injunction precludes the defendants from engaging in additional predicate acts in furtherance of the alleged scheme to defraud the plaintiff. Further, the plaintiff's reliance on wrongful conduct after the date of the injunction is misplaced. Paragraph 25 of the amended complaint concerns a trade show in mid-August, 2000, at which defendant Rule allegedly misinformed some vendors as to the plaintiff's creditworthiness. The plaintiff does not cite to any federal or state statutes which were purportedly violated by this conduct nor is there any indication that the alleged misinformation was communicated by

mail or wire. Thus, Paragraph 25 does not recite a predicate act for purposes of this court's continuity analysis.

2. Whether the injunction will be made permanent or dissolved turns on resolution of the lawsuit on which it was predicated, which did not include the RICO claim. *Compare* Complaint, doc. No. 1 (asserting federal trade dress, and copyright infringement claims with state trade secrets and unfair competition claims) *with* Amended Complaint, doc. No. 49 (adding RICO claim and related state claims). Either resolution, however, confirms this court's conclusion that the plaintiff cannot demonstrate a threat of continuity. If the plaintiff wins on the merits and the injunction is made permanent, there can be no continuing threat of criminal activity into the future. If the plaintiff loses on the merits and

*Iowa's "continuing basis" standard*

█ In *State of Iowa v. Stanley L. Reed,* 618 N.W.2d 327 (Iowa 2000), the Iowa Supreme Court held that "[g]iven the similarity between the underlying purposes of RICO and Iowa Code chapter 706A, we think the interpretation given to 'pattern of racketeering activity' by the United States Supreme Court in *H.J., Inc.* is a reasonable one for 'continuing basis' in section § 706A.1(5) [defining 'specified unlawful activity']." *Id.* at 335. It follows, therefore, that the plaintiff cannot show that the unlawful activity underlying its § 706A.2(1)(c) claim occurred or will occur on a continuing basis as required under Iowa law.

### CONCLUSION

Because Walker Manufacturing can prove no set of facts which would establish the continuity element required by both RICO and IC § 706A.2(1)(c), the defendants' motion to dismiss count 1 of the plaintiff's Amended Complaint should be granted.

### ORDER

Accordingly, for the reasons discussed above, it is ORDERED:

The motion by defendant Hoffman, Inc., and defendant Larry Emmert (doc. no. 58) to dismiss count 1 of the plaintiff's Amended Complaint is GRANTED.

the injunction is dissolved, it strongly suggests that the threat was never there in the first place.