# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2662

_____

In re: Cerner Corp. Securities Litigation *
_____ *
 *
John A. Campagnuola, Individually *
and on Behalf of All Other Similarly *
Situated, *
 *
    Plaintiff, *
 *
Phil Crabtree, * Appeal from the United States
 * District Court for the
   Plaintiff/Appellant, * Western District of Missouri.
 *
  v. *
 *
Cerner Corporation; Neal Patterson; *
Mark Naulten; Paul Black; Clifford W. *
Illig; Earl H. Devanny, III; Glenn P. *
Tobin, *
 *
   Defendants/Appellees. *

_____

Submitted: January 13, 2005
Filed: October 6, 2005

_____

Before WOLLMAN, MURPHY, and BYE, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Phil Crabtree, the lead plaintiff in a securities fraud class action against Cerner Corporation (Cerner) and several individual defendants, appeals from the district court's[1] dismissal of the consolidated class complaint, as well as the district court's denial of leave to amend the complaint. We affirm.

**I.**

Because Crabtree's appeal arises from the district court's grant of a motion to dismiss, we draw the relevant facts from the class complaint. See Fla. State Bd. of Admin. v. Green Tree Fin'l Corp., 270 F.3d 645, 648 (8th Cir. 2001). Cerner sells clinical and management information systems to healthcare providers. Cerner also provides services and personnel to install, support, and implement its products. On April 3, 2003, after enjoying a span of thirteen consecutive quarters in which its reported earnings either met or exceeded estimates, Cerner announced that it would not meet its revenue and earnings projections for the first quarter of 2003 because of "a lower level of new business bookings in the quarter." Cerner attributed the shortfall to a variety of factors, including "a change in the competitive environment," "more challenging economics for health care provider organizations," and the company's "move to a more client-centric organizational structure," all of which affected Cerner's ability to replace deals that it had lost or "pushed with new business." In response to this announcement, Cerner's stock quickly lost approximately 45% of its value.

Shortly after the April 3 announcement, several securities fraud class actions were filed against Cerner and some of its officers and directors (collectively, the Individual Defendants). The district court consolidated those actions and appointed Crabtree to act as lead plaintiff on behalf of a class consisting of all persons who purchased or otherwise acquired Cerner securities between July 17, 2002, and April

---

[1]The Honorable H. Dean Whipple, Chief Judge, United States District Court for the Western District of Missouri.

2, 2003, inclusive (the class period). Crabtree subsequently filed a consolidated class action complaint, and he now alleges that Cerner and the Individual Defendants issued a series of statements during the class period that were materially false or misleading in violation of SEC Rule 10b-5. 17 C.F.R. § 240.10b-5. Crabtree also asserts that the Individual Defendants are jointly and severally liable for the alleged misstatements by virtue of their status as "controlling persons" of Cerner. See 15 U.S.C. § 78t(a).

Crabtree's claims encompass two groups of alleged misstatements. The first group concerns Cerner's future earnings projections. Crabtree argues that the Individual Defendants made favorable statements throughout the class period about Cerner's growth, the demand for its products, and Cerner's opinions on future earnings forecasts—specifically, that the demand for Cerner's products was "strong," that the company saw "substantial opportunities" in the future, and that the company was "comfortable" with certain earnings and performance estimates—while at the same time failing to disclose that: (1) Cerner was experiencing an increased level of competition and losing a material amount of sales as competitors slashed prices in order to take business from Cerner; (2) Cerner was offering substantial product and service discounts in order to close deals before the end of a given quarter; (3) to a material extent, clients were delaying or deferring purchases of Cerner's products, or deciding not to proceed with those purchases at all, due to general economic factors and to dissatisfaction with Cerner's performance; (4) Cerner had engaged in an aggressive revenue recognition policy, allowing the company to "pull in" revenue projected to be recognized in future quarters; (5) Cerner had reorganized its sales force, which negatively impacted the ability of the company to close certain deals; and (6) Cerner was increasingly focused on closing a small number of large deals under circumstances in which Cerner's bottom line was unusually sensitive to losing such deals. J.A. at 0052-0061. Crabtree claims that the omission of these facts rendered the favorable statements materially false and misleading.

The second group of disputed statements primarily addresses the underlying reasons for Cerner's repeated earnings successes. The Individual Defendants represented that such earnings successes were attributable to Cerner's "leadership position," "consistent execution," and "experience" in the industry. Id. Crabtree claims that these statements were materially misleading because the Individual Defendants failed to mention that Cerner had only attained its earnings numbers by pulling in sales revenues that were projected to be recognized in future quarters. Crabtree contends that this alleged failure to disclose the true reasons for Cerner's historical earnings successes made the company's statements about its historical results materially false and misleading.

After the consolidated class complaint was filed, Cerner and the Individual Defendants filed a motion to dismiss. The district court granted the motion to dismiss, holding that the complaint did not meet the heightened pleading standards for falsity and scienter required by the Private Securities Litigation Reform Act of 1995 (Reform Act). See 15 U.S.C. § 78u-4(b). The district court further found that amending the complaint would be futile, and thus denied Crabtree leave to amend.

## II.

We review *de novo* the district court's grant of a motion to dismiss a securities fraud complaint. Fields v. AMDOCS Ltd. (In re AMDOCS Ltd. Sec. Litig.), 390 F.3d 542, 547 (8th Cir. 2004). The district court's decision may only be affirmed if the plaintiffs can prove no set of facts which would entitle them to the relief requested. Migliaccio v. K-tel Int'l, Inc. (In re K-tel Int'l, Inc. Sec. Litig.), 300 F.3d 881, 888-89 (8th Cir. 2002) We construe the complaint liberally and accept all facts pleaded therein as true, but reject conclusory or catch-all assertions of law and unwarranted inferences. Id. at 889.

The Reform Act provides that, to survive a motion to dismiss, a securities plaintiff must satisfy two heightened pleading standards. 15 U.S.C. § 78u-4(b)(3).

-4-

First, the plaintiff must plead falsity by specifying each allegedly misleading statement and the reasons why each statement is misleading. 15 U.S.C. § 78u-4(b)(1). If falsity is alleged based upon information and belief, the complaint must state with particularity all facts on which the belief is formed. Id. In addition, the plaintiff must plead scienter by "stat[ing] with particularity facts giving rise to a strong inference that the defendants acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Crabtree's complaint meets neither standard.

## A.

In order to satisfy the Reform Act's falsity pleading standard, a complaint may not rest on mere allegations that fraud has occurred. Chen v. Navarre Corp. (In re Navarre Corp. Sec. Litig.), 299 F.3d 735, 742 (8th Cir. 2002). Instead, the complaint must indicate why the alleged misstatements "would have been false or misleading at the several points in time in which it is alleged they were made." Id. at 743. In other words, the complaint's facts must necessarily show that the defendants' statements were misleading. Fields, 390 F.3d at 549 (Wollman, J., concurring).

Crabtree's complaint alleges that Cerner's statements regarding future earnings were materially false and misleading because Cerner was losing deals due to increased competition, dissatisfied customers, a general economic downturn, an inexperienced sales force, and a neglect of smaller deals. The complaint is devoid, however, of any indication that this alleged loss of deals, even if "material," is necessarily inconsistent with Cerner's statements that its demand was "strong." A company could conceivably lose a material number of deals it had pursued, and yet continue to see a strong demand for its products and substantial future opportunities. Furthermore, there is no indication on the face of the complaint that even a material loss of deals necessarily rendered Cerner unable to achieve its projected earnings. Finally, and perhaps most importantly, the complaint does not identify a single specific deal that was lost due to alleged changes in Cerner's corporate structure and strategies. Without any indication that an undefined loss of sales necessarily would

-5-

affect the company's overall demand or its ability to meet its future earnings projections, these allegations cannot survive the Reform Act's falsity standard.[2] Id. at 549-50.

The complaint's allegations regarding the alleged pulling in are similarly deficient. Although Crabtree is not required to describe in detail the circumstances of Cerner's pulling in activities, he is required to plead with particularity the "who, what, when, where, and how" of the pulling in.[3] Navarre, 299 F.3d at 744-45. Here, Crabtree's complaint alleges that the pulling in took place and caused an overstatement in Cerner's earnings during each quarter in the class period and an impairment in Cerner's ability to meet future earnings guidance. The complaint fails, however, to allege the amount of any overstatements, the extent of any pulling in that took place, or the amount of any revenue that was pulled in from future quarters. Thus, the complaint's general description of the pulling in, without more, cannot satisfy the heightened falsity pleading standard. Id. (general description of alleged

---

[2]Crabtree also alleges that the Individual Defendants were aware that their projections for the first quarter of 2003 were "going to be a bust" at the time they publicly disclosed the projections on January 23, 2003. If the Individual Defendants in fact possessed knowledge that they could not achieve their first quarter targets, it is conceivable that their favorable outlooks may have been false. Because we conclude that, even as to this challenged statement, Crabtree cannot satisfy the Reform Act's heightened pleading standard for scienter, we need not address the issue of the statement's falsity.

[3]We reject Crabtree's argument that he need not meet this standard because his complaint alleges that the failure to disclose the pulling in practice, rather than the existence of the practice itself, rendered the statements materially false and misleading. In Navarre, we held a revenue overstatement claim subject to the "who, what, when, where, and how" standard. 299 F.3d at 744-45. The plaintiffs' claim in that case, like Crabtree's claim, alleged that the defendant corporation had used a revenue recognition scheme in order to inflate its revenue, net income, and earnings per share. Id. at 744. The fact that the scheme in Navarre allegedly was illegal, while the practice here allegedly was not, does not affect the standard's applicability.

wrongdoing by defendants, unaccompanied by more specific information, does not reach the level of particularity required by the Reform Act).

**B.**

Crabtree's complaint also fails to satisfy the Reform Act's scienter pleading standard. Although the Reform Act does not prescribe any particular method of meeting the scienter standard, inferences of scienter will survive a motion to dismiss only if they are "both reasonable and strong." Kushner v. Beverly Enters., Inc., 317 F.3d 820, 827 (8th Cir. 2003) (citation and internal quotations omitted). Scienter is normally a factual question to be decided by a jury, but the complaint must at least provide a factual basis for its scienter allegations. K-tel, 300 F.3d at 894.

Crabtree's complaint seeks to prove scienter by showing that the Individual Defendants received a "concrete and personal benefit," see id., from their misstatements and omissions through well-timed insider trading and executive compensation. J.A. at 0034-0041, 0070-0074. Insider trading activity may create an inference of scienter when the trading activity during the class period is unusual. K-tel, 300 F.3d at 895-96. Here, the complaint's allegations of insider trading pertain to only one Individual Defendant (Clifford Illig), and allege that he sold approximately 4% of his stock (113,383 shares out of approximately 3 million). This amount is certainly not unusual on its face, and the complaint lacks any additional allegations—such as prior trading history—that would tend to show that Illig's trading activity was otherwise unusual. See Fields, 390 F.3d at 550 (Wollman, J., concurring). This deficiency, along with the fact that none of the other Individual Defendants are alleged to have traded any stock during the class period, "decreases any inference of scienter." K-tel, 300 F.3d at 895-96.

Similarly, Crabtree's allegations that the Individual Defendants were motivated to make the alleged misstatements by their desire to increase their bonus and executive compensation packages and to make the company seem more profitable in

preparation for a private debt placement fail to raise the requisite strong inference of scienter. The desire to make a company seem more profitable is a desire "universally held among corporations and their executives," Green Tree, 270 F.3d at 664, and thus is insufficient to prove scienter as a matter of law. K-tel, 300 F.3d at 894. Furthermore, unless the complaint shows that the benefit to an individual defendant is unusual, a desire to increase executive compensation is also insufficient to prove scienter. K-tel, 300 F.3d at 895.

We have previously held that an individual defendant's benefit is unusual based upon the overwhelming magnitude of the benefit and other suspicious circumstances, such as a timing coincidence. See Green Tree, 270 F.3d at 661 ($102 million benefit to individual defendant, and alleged overstatement of earnings took place just as individual defendant's contract was to expire). In Cerner's case, however, the largest bonus (allegedly based upon company-wide performance) paid to any one Individual Defendant during the Class Period was approximately $355,000, the aggregate bonus paid was approximately $1 million, and no suspicious circumstances similar to those in Green Tree are present. The complaint thus fails to show the unusual benefit required to plead scienter. See also Kushner, 317 F.3d at 830 (finding allegations of personal benefit insufficient where largest single bonus was $630,000, aggregate bonus was over $1.7 million, and no other suspicious circumstances were present).

Crabtree's complaint further alleges that scienter is established as a result of the Individual Defendants' knowledge or reckless disregard of the falsity of each challenged statement. Because we hold that the complaint has not established the falsity or misleading nature of any of the challenged statements (with the possible exception of the January 23, 2003, earnings forecast), this allegation necessarily fails. In addition, even if the January 23 statement was false, Crabtree's complaint does not show that it was knowingly false when made.

As support for its allegation that the January 23 earnings forecast was knowingly false when made, the complaint cites the statement of a former Cerner regional sales manager that he and some of his personnel discussed among themselves the unattainable nature of the earnings forecasts. At best, this allegation establishes that such an opinion was held by the regional sales manager and his peers. It sheds no light on the relevant issue of whether the Individual Defendants shared this view, or indeed of whether the forecasts were necessarily unattainable. Accordingly, it is not sufficient to establish a strong inference that the January 23 statement, even if false, was issued with the requisite scienter.

**III.**

Finally, Crabtree argues that the district court abused its discretion in denying him leave to amend his complaint to comply with the Reform Act's pleading requirements. "[L]eave to amend should be granted freely 'when justice so requires.'" K-tel, 300 F.3d at 899 (quoting Fed. R. Civ. P. 15(a)). Nevertheless, futility is a valid reason for denial of a motion to amend. Id.

Where the district court's holding that amendment would be futile is based upon its finding that no actual amendments to the complaint are possible, we review the denial of leave to amend for abuse of discretion. Id. at 889-900. Where the district court's denial of leave to amend based upon futility is in turn based upon a finding that a specific allegation, even if amended, would fail to state a claim as a matter of law, we review the denial *de novo*. Id. at 889.

We need not attempt to ascertain the basis of the district court's ruling, however, because we would affirm the district court's decision under either standard. Like the plaintiff in K-tel, Crabtree was afforded ample opportunity to explain to the district court how he would amend his complaint in order to comply with the Reform Act's pleading standards. For instance, he could have filed a motion for reconsideration of the district court's denial of leave to amend under Fed. R. Civ. P.

59(e). In such a motion, which Crabtree could have filed after the district court had informed him of the complaint's deficiencies, he could have detailed any potential amendment to the district court. In addition, Crabtree could have provided the substance of his proposed amendments in his principal or reply briefs before this court. Instead, he simply asserted that he is able to amend, but does not believe that he should have to.[4] Under either an abuse of discretion or a *de novo* standard of review, we agree with the district court that Crabtree has not shown that any potential amendment would save his complaint. See also Wisdom v. First Midwest Bank, of Poplar Bluff, 167 F.3d 402, 409 (8th Cir. 1999) ("[P]arties should not be allowed to amend their complaint without showing how the complaint could be amended to save the meritless claim.").

Accordingly, we affirm the district court's dismissal of Crabtree's complaint, as well as its denial of leave to amend the complaint.

––––––––––––––––––––––––

[4]Although Crabtree's counsel did contend at oral argument that he could identify specific deals and dollar amounts in an amended complaint, he failed to explain whether those potential amendments would satisfy the Reform Act's pleading standards.