Filed 3/25/21  Millan v. Facebook CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| RODRIGO DE SOUZA MILLAN,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>　　　Defendant and Respondent. | A161113<br><br>(San Mateo County<br>Super. Ct. No. 19-CIV-06350) |

Plaintiff Rodrigo De Souza Millan appeals from a judgment after the trial court sustained defendant Facebook, Inc.'s demurrer to Millan's amended complaint without leave to amend.  We agree with the trial court that Millan's complaint failed to state any viable claim against Facebook, so we will affirm the judgment.

## I.　BACKGROUND[1]

Millan alleged in his amended complaint that he posted a comment on Bill Gates's Facebook page related to global warming.  Millan posted this comment as part of an attempt to sell his services, and the comment was not objectionable.  When Millan logged off of his account and logged back in under a different account, he discovered the comment he had posted was hidden.  He logged back in again using his first account and saw his

---

[1] The facts set forth herein are taken from Millan's amended complaint.

1

comment. Millan alleged this demonstrated that Facebook was trying to deceive him into thinking he had posted a publicly visible comment, when in fact the comment was not visible.

Millan alleged eight claims based on these facts. His first four claims were based on section 230(b)(2)–(3), (b)(5), and (c)(2)(A) of the Communications Decency Act (47 U.S.C. §§ 230 et seq.).[2] He also alleged a claim for discrimination in public accommodations under section 2000a(a) of the federal Civil Rights Act (42 U.S.C. §§ 1981 et seq.); a claim for discrimination in communications under 47 U.S.C section 202; a claim for interception of electronic communications under 18 U.S.C. section 2511(1)(a); and a wire fraud claim under 18 U.S.C. section 1343.

The trial court sustained Facebook's demurrer to these claims without leave to amend. Plaintiff appealed.

## II.   DISCUSSION

" 'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] ' " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed." . . . Further, we give the complaint

---

[2] Millan's complaint cited section 230(c)(A) of the Communications Decency Act (47 U.S.C. §§ 230 et seq.). There is no such subsection in the statute, so we assume he intended to cite section 230(c)(2)(A).

a reasonable interpretation, reading it as a whole and its parts in their context.' " ' " (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.)[3]

Millan's first three claims in his amended complaint are based on section 230(b) of the Communications Decency Act (47 U.S.C. §§ 230 et seq.). That statute provides, in pertinent part, "It is the policy of the United States—[¶] . . . [¶] (2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation; [¶] (3) to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services; [¶] . . . and [¶] (5) to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer." (47 U.S.C. § 230(b).) Millan's amended complaint alleges Facebook failed to carry out these policies, but Millan has cited no authority and provided no argument for why Facebook's failure to follow these policies could render it liable to him. The plain language of the statute shows that these are merely expressions of Congressional policy. These policies are not substantive provisions that provide a basis for liability, nor do they create a private right of action. (See *Belknap v. Alphabet, Inc.* (D. Or., Dec. 1, 2020, No. 3:20-CV-1989-SI) ___ F.Supp.3d ___, 2020 U.S. Dist. Lexis 224564, at *7–*8 [allegation that company deleted online posts did not allege a violation of 47 U.S.C. § 230, and even if it did, it is unlikely there would be a private right of

---

[3] We note that plaintiff does not argue on appeal that he could amend his claims to cure the deficiencies identified by the trial court, nor does he contend that he could allege new, viable causes of action not set forth in his amended complaint.

3

action to enforce the violation].)  The trial court correctly sustained Facebook's demurrer to Millan's first three claims.

Millan's fourth claim rests on section 230(c)(2)(A) of the Communications Decency Act (47 U.S.C. §§ 230 et seq.).  According to that provision, "No provider or user of an interactive computer service shall be held liable on account of—[¶] (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected."  (47 U.S.C. § 230(c)(2).)  Millan alleges Facebook failed to follow this provision by blocking his content based on discrimination and hate, rather than one of the acceptable reasons listed in the statute.  But this provision provides an immunity, so even if Facebook acted discriminatorily, at most that would deprive it of the immunity that the statute provides.  Millan has not explained how Facebook's failure to acquire immunity under section (c)(2)(A) could establish its liability to him, so the trial court correctly sustained Facebook's demurrer to this claim.  (See *Belknap v. Alphabet, Inc.*, *supra*, 2020 U.S. Dist. Lexis 224564, at \*7 [plaintiff failed to state a claim under 47 U.S.C. § 230 in part because the statute provides immunity].)

Millan's fifth claim alleges Facebook deprived him of the full and equal enjoyment of Facebook.com, in violation of section 2000a(a) of the Civil Rights Act (42 U.S.C. §§ 1981 et seq.).  That statute establishes, "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."  Millan

4

alleges in his amended complaint that Facebook discriminated against him by blocking his post because it wanted to stop him from selling his services. Putting aside the question of whether Facebook constitutes a "public accommodation," the statute does not prohibit businesses from discriminating on this basis. As Millan nowhere alleges that Facebook acted against him based on one of the classifications the Civil Rights Act prohibits, he has failed to state a claim on which relief can be granted under that Act.

In his sixth claim, Millan alleges Facebook violated 47 U.S.C. section 202 by its "[d]iscrimination and [p]reference practices with communications." 47 U.S.C. section 202(a) makes it "unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage." Millan contends Facebook qualifies as a common carrier for the purposes of this statute because it falls within the statutory definition of a "common carrier" as "any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or in interstate or foreign radio transmission of energy." (47 U.S.C. § 153(11).) He also cites the statutory definition that " 'communication by wire' means the transmission of writing, signs, signals, pictures, and sounds of all kinds by aid of wire, cable, or other like connection between the points of origin and reception of such transmission." (47 U.S.C. § 153(59).) Separately, Millan argues Facebook also qualifies as a common carrier because it is a "telecommunications carrier." A "telecommunications carrier is a provider of telecommunications

5

services, which are "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used."  (47 U.S.C. § 153(51), (53).)  A telecommunications carrier is treated as a common carrier, subject to exceptions not relevant here.  (47 U.S.C. § 153(51).)

Millan's reliance on these provisions is misplaced.  First, Facebook does not satisfy the definition of a "common carrier."  Millan's complaint may be liberally construed to allege that Facebook generates digital signals in the form of "binary communication codes," as he puts it, but he does not allege that Facebook transmits these signals from their point of origin to their point of reception.  Indeed, such allegations would be contrary to the general operation of the Internet, in which some companies create digital content and others own and operate the wires and other infrastructure that transmits the digital content to users.  (See *United States Telecom Ass'n v. Federal Communications Commission* (D.C. Cir. 2016) 825 F.3d 674, 690.)

Nor does Facebook qualify as a common carrier by virtue of meeting the definition of "telecommunications carrier" as a provider of "telecommunications services."  The definitions Millan relies on, like 47 U.S.C. section 202(a) itself, are part of the Communications Act of 1934 (47 U.S.C. § 151 et seq.), which "divides the world of relevant technologies into two buckets: 'information services' subject only to minimal regulation, and 'telecommunications services' subject to the common carriage requirements."  (*Mozilla Corporation v. Federal Communications Commission* (D.C. Cir. 2019) 940 F.3d 1, 88 (conc. opn. of Millett, J.); see *National Cable & Telecommunications Ass'n v. Brand X Internet Services* (2005) 545 U.S. 967, 975 ["The Act regulates telecommunications carriers, but not information-service providers, as common carriers"].)  The distinction between

6

telecommunications services and information services turns on whether a given service is merely transmitting data back and forth from a user, or whether the service also offers "a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications." (47 U.S.C. § 153(24); *National Cable,* at pp. 976–977.)

Millan alleges in his complaint that Facebook allowed him to post a comment, which Facebook then stored and displayed back to Millan when he logged in again under the same account. Thus, according to Millan's allegations, Facebook acquired his comment, stored it, and then made it available to Millan for retrieval later. According to Millan's complaint, then, Facebook qualifies as an information service and is not subject to 47 U.S.C. section 202(a). Millan's sixth claim therefore fails.

Millan's seventh claim alleges Facebook failed to follow 18 U.S.C. section 2511(1)(a) in that it intentionally intercepted electronic communications for years. With exceptions not relevant here, 18 U.S.C section 2511(1)(a) states that anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" is subject to a fine or imprisonment. (18 U.S.C. § 2511(1)(a), (4).) Though Millan does not cite it, a separate statute creates a private right of action for anyone whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of the law. (18 U.S.C. § 2520(a).) Interception is defined as 'the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." (18 U.S.C. § 2510(4).)

Millan alleges no facts that would support a claim under these statutes. Millan's conclusory allegation that Facebook intercepted electronic communications for years is insufficient, and Millan's complaint fails to otherwise identify any specific communications that Facebook intercepted. Millan's allegation that Facebook took his post and fraudulently made it appear as though it were visible to the public on Bill Gates's Facebook page does not satisfy the statute. According to Millan's own allegations, he voluntarily provided the comment to Facebook in the expectation that Facebook would display it publicly. Millan does not explain how the statute can be construed to prohibit this. (See 18 U.S.C. § 2511(2)(g)(i) [it is not unlawful "to intercept or access an electronic communication made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public"]; *Kimbrell v. Twitter, Inc.* (N.D. Cal., Feb. 14, 2019, No. 18-CV-04144-PJH) 2019 U.S. Dist. Lexis 24525, at *9–*10 [claim under 18 U.S.C. § 2511 based on allegation that company intercepted public internet posts failed because of 18 U.S.C. § 2511(g)(2)(i)].) Millan's seventh claim therefore fails to state a claim upon which relief can be granted.

In his eighth and final claim, Millan alleges that Facebook violated 18 U.S.C. section 1343 by falsely representing his electronic transmissions. That statute establishes penalties for anyone who "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice." (18 U.S.C. § 1343.) 18 U.S.C. section 1343 is a criminal statute,

and it does not create a private right of action for damages.  (*Wisdom v. First Midwest Bank* (8th Cir. 1999) 167 F.3d 402, 408–409.)  Millan cannot state a claim for relief based on this statute.

## DISPOSITION

The judgment is affirmed.

BROWN, J.

WE CONCUR:

POLLAK, P. J.
TUCHER, J.

*Millan v. Facebook, Inc.*  (A161113)