# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3470

_____

Crest Construction II, Inc.; Metro   *
Energy, Inc.,   *
  *
    Plaintiffs - Appellants,   *
  *
   v.   *
  *
John Doe; John D. Hart; Dee Hart;   *
On Time Auto Sales and Financing,   *
LLC, also known as On Time Auto;   *
Hart Family Motors, Inc., also   *
known as On Time Auto; Fidelity   *
Three, Inc., also known as On Time   *
Auto; AAJD Investments, LLC, also   *
known as On Time Auto; Kearney   *
Land Acquisitions, LLC, also known as   *   Appeal from the United States
On Time Auto; Northland Auto   *   District Court for the
Brokers, LLC; Homes 4 Less, LLC;   *   Western District of Missouri
Larry K. Myers, Mr. 71 The   *
Woodlands Gladstone, MO 64119;   *
Connie Myers, 71 The Woodlands   *
Gladstone, MO 64119; Northland II,   *
Inc., also known as Northland Auto   *
Sales& Leasing, LLC, also known as   *
Northland Auto Sales, LLC; Northland   *
Auto Sales & Leasing, LLC, also   *
known as Northland II, Inc.; Northland   *
Auto Sales, LLC, also known as   *
Northland II, Inc.; Buddy W. Taylor;   *
Estate of Harvey Chaddock,   *
#06CY-PR00418, Probate Court of   *
Clay County; Hilda Marie Chaddock,   *

also known as On Time Auto, doing    *
business as Fidelity Three, Inc.,    *

                                *

            Defendants - Appellees.    *

_____

Submitted: May 11, 2011
Filed: October 31, 2011

_____

Before MELLOY and SMITH, Circuit Judges, and GRITZNER,[1] District Judge.

_____

GRITZNER, District Judge.

Crest Construction II, Inc. (Crest) and Metro Energy, Inc. (Metro) (collectively, Plaintiffs) brought this action against several defendants alleging violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 28 U.S.C. § 1961 et seq., and raising several state law causes of action. The district court[2] granted the Defendants' motion to dismiss the RICO claim and declined to exercise supplemental jurisdiction over the state law claims. The district court denied Plaintiffs' subsequent motions to reconsider and to amend their complaint. This appeal followed. We affirm.

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

[2]The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

## I. BACKGROUND[3]

In December 2003, Randall Robb (Robb), doing business as Crest, was approached by business acquaintance Larry Myers (Myers) about purchasing third-party auto sales contracts and promissory notes (Loan Accounts) from On Time Auto, Inc. (On Time Auto).[4] Myers set up several meetings between the owners of On Time Auto, John and Dee Hart (the Harts), and Robb. In January 2004, relying on Myers' success in the auto sales industry, assurance that On Time Auto's methods of operation were customary, and confidence that Crest's investment would be safe, Crest entered into an oral agreement with On Time Auto (the Operating Agreement). Under the terms of the Operating Agreement, when On Time Auto sold a vehicle to a third-party customer, Crest would submit to On Time Auto 100% of the sale price less any down payment, and On Time Auto would assign the Loan Account to Crest.

The Operating Agreement called for On Time Auto to provide Crest with a file for each Loan Account containing copies of the executed purchase and loan agreements for each vehicle sale. On a weekly basis, On Time Auto was to provide Crest

---

[3]"We are 'bound to accept as true, for purposes of [a Rule 12(b)(6)] motion, the facts alleged by the plaintiff,'" Joyce v. Armstrong Teasdale, LLP, 635 F.3d 364, 365 (8th Cir. 2011) (quoting Stephens v. Associated Dry Goods Corp., 805 F.2d 812, 814 (8th Cir. 1986)), and will not consider facts not properly before the district court, see C.N. v. Willmar Public School, Independent School District No. 347, 591 F.3d 624, 629 n.4 (8th Cir. 2010) ("An appellate court can properly consider only the record and facts before the district court and thus only those papers and exhibits filed in the district court can constitute the record on appeal." (quotation marks omitted)).

We note that Plaintiffs-Appellants included the proposed amended complaint in the appellate record but not the original complaint. Dismissal of the original complaint being the basis of this appeal, it was incumbent upon the Court to obtain the original complaint from the district court docket, see Compl., W. D. Mo. Case No. 07-0728-CV-W-DK, ECF No. 3.

[4]It appears from the complaint that Myers already held an investment interest in On Time Auto at the time Myers proposed the business deal to Robb.

-3-

with receipt books and printouts of all third-party customer payments made on the Loan Accounts and to submit those principal and interest payments to Crest. The parties agreed that the liens on the vehicles Crest financed were to be registered in On Time Auto's name and that On Time Auto would retain control of all business documents such as titles and liens.[5]

The Operating Agreement further provided that On Time Auto would transfer 20% of the value of each Crest-purchased Loan Account into a separate account (the Reserve Account), to be used to reimburse Crest in the event a Loan Account became delinquent and uncollectible from the third-party customer. The parties also agreed that when On Time Auto relinquished its lien on the respective vehicle, On Time Auto would pay Crest the entire balance of the Loan Account. Crest did not agree to the resale of a Loan Account to other financiers. During 2004, Crest purchased approximately 268 Loan Accounts.

In February 2004, Myers invited Robb, doing business as Metro, to buy an equity ownership interest in On Time Auto for $300,000, promising Robb that his buy-in money would be used to pay off On Time Auto's business debt. Metro made one $100,000 payment to On Time Auto in March 2004, and a second $100,000 payment in June 2004. Metro discovered, however, that On Time Auto used Metro's $200,000 investment to buy out equity owner Buddy W. Taylor's equity interest in On Time Auto, instead of paying off On Time Auto's business debt. This buyout left the Harts, Myers, and Metro each with a one-third equity interest in On Time Auto. Through June 2004, On Time Auto paid Metro, as a one-third equity owner in On Time Auto, $34,821.01 in profits.

---

[5]According to Plaintiffs, Myers convinced Crest that it was necessary for On Time Auto to retain possession of all original files and payment records in order to carry out day-to-day operations, which included early payoffs, repossessions, and trade ins.

In June 2004, Myers unilaterally withdrew from the day-to-day operations of On Time Auto and used the entire amount in the Reserve Account ($40,000) for his own purposes. In June 2004, with the Reserve Account depleted and its guarantee of payment severely impacted, Crest refused to purchase Loan Accounts at 100% of the auto loan face value and began purchasing them at 65%.

On October 4, 2007, Plaintiffs filed a six-count complaint in U.S. District Court for the Western District of Missouri against several individuals and entities including John C. Hart; Dee Hart; On Time Auto Sales and Financing, LLC; Hart Family Motors, Inc.; Fidelity Three, Inc.; AAJD Investments, LLC; Kearney Land Acquisitions, LLC; Northland Auto Brokers, LLC; Homes 4 Less, LLC; Larry Myers; Connie Myers; Northland II, Inc.; Northland Auto Sales & Leasing, LLC; Northland Auto Sales, LLC; Buddy W. Taylor; the Estate of Harvey Chaddock; and Hilda Chaddock (collectively, Defendants). The complaint alleged violations of the RICO Act, and common law claims for breach of contract, fraud, conversion, and civil conspiracy.

On February 23, 2010, after Defendants had secured new counsel[6] as ordered by the district court, the district court amended the scheduling order and reset trial for October 4, 2010. On June 10, 2010, Defendants moved to dismiss the RICO claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to adequately allege the necessary elements. Plaintiffs resisted, arguing the complaint adequately pled the necessary elements of a RICO claim.

On August 27, 2010, the district court granted Defendants' motion to dismiss the RICO claim, denied Plaintiffs' motion to amend the complaint,[7] declined to

---

[6]The Harts proceeded pro se.

[7]The record does not contain an express order denying the motion to amend the complaint. However, in its order of August 27, 2010, the district court discussed the

exercise supplemental jurisdiction over the remaining state law claims, and dismissed the case in its entirety. Crest Constr. II, Inc. v. On Time Auto, No. 07-0728-CV-W-DGK, 2010 WL 3456690, at *5 (W.D. Mo. Aug. 27, 2010).[8] Plaintiffs filed a motion to reconsider, which the district court denied on November 4, 2010. Crest Constr. II, Inc. v. On Time Auto, No. 07-0728-CV-W-DGK, 2010 WL 4630830, at *2-3 (W.D. Mo. Nov. 4, 2010). On appeal, Plaintiffs challenge all rulings.

## II.    DISCUSSION
### A.    Standard of Review

"We review de novo the district court's decision to dismiss a complaint under Federal Rules of Civil Procedure 12(b)(6) or 9(b)." Summerhill v. Terminix, Inc., 637 F.3d 877, 880 (8th Cir. 2011). We will affirm the dismissal if the complaint fails to allege facts sufficient to "state a claim to relief that is plausible on its face." Walker v. Barrett, 650 F.3d 1198, 1203 (8th Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[L]egal conclusions, without any supporting factual allegations, are insufficient to survive a motion to dismiss." Id. at 1209 (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)); see Twombly, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). "[T]he plausibility standard, which requires a federal court complaint 'to state a claim to relief that is plausible on its face, . . . asks for more than

_____

untimeliness and futility of the Plaintiffs' proposed amended complaint, and the docket history shows that Plaintiffs' motion to amend the complaint was terminated with that order, thus we accept August 27, 2010, as the date the district court denied the motion to amend.

[8]Although the Harts, now proceeding pro se, did not join the motion to dismiss, the district court dismissed the RICO claim as to all Defendants, including the Harts, reasoning, "[I]t makes no sense to dismiss Count VI with respect to only those Defendants who formally joined the motion. Count VI should be dismissed with respect to all Defendants." Crest Constr., 2010 WL 3456690, at *5 (citing Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991)).

a sheer possibility that a defendant has acted unlawfully.'" Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (second alteration in original) (quoting Iqbal, 129 S. Ct. at 1949). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. (second alteration in original) (quoting Iqbal, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2))).

## B. RICO Claim

Section 1962 of the RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

Nitro Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 428 (8th Cir. 2009) (quoting 18 U.S.C. § 1962(c)). "RICO provides a private right of action for any person 'injured in his business or property by reason of a violation of' its substantive prohibitions." Dahlgren v. First Nat'l Bank of Holdrege, 533 F.3d 681, 689 (8th Cir. 2008) (quoting 18 U.S.C. §1964(c)). However, RICO "does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." Gamboa v. Velez, 457 F.3d 703, 705 (7th Cir. 2006). "A violation of § 1962(c) requires appellants to show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Nitro Distrib., 565 F.3d at 428 (quoting Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted)).

A RICO claim must be pleaded with particularity under Rule 9(b). Id. "Under Rule 9(b)'s heightened pleading standard, allegations of fraud . . . [must] be pleaded with particularity. In other words, Rule 9(b) requires plaintiffs to plead the who, what,

when, where, and how: the first paragraph of any newspaper story." Summerhill, 637 F.3d at 880 (alteration in original) (citations and internal quotation marks omitted).

Twenty-seven paragraphs of Plaintiffs' complaint purportedly set out the factual basis for Plaintiffs' RICO claim. The complaint broadly and nonspecifically alleges Defendants formed and operated an "association in fact" that fraudulently grew a "web of interrelated" commonly-owned and managed companies that engaged in a host of "fraudulent and illegal" business practices, including mail and wire fraud, and used this association in fact to fraudulently induce Plaintiffs to purchase third-party vehicle loan accounts from On Time Auto and to purchase—then lose—an equity interest in On Time Auto. Compl. ¶¶ 58-63, 67-68, W. D. Mo. Case No. 07-0728-CV-W-DK, ECF No. 3 [hereinafter Compl.]. The complaint further asserts that Defendants used On Time Auto as a front to maximize and divert the revenues and profits of the illegal enterprise and to secure Plaintiffs' entry into the Operating Agreement with On Time Auto by using Plaintiffs' previous business dealings with Myers, proximity to Defendants' business, and unawareness of the existence of Defendants' RICO enterprise.

The complaint goes on to allege that Defendants manipulated the finances and accountings of On Time Auto's business accounts and converted Plaintiffs' equity interest in On Time Auto. Plaintiffs also allege that the creation and operation of the RICO enterprise made it possible for Defendants to fraudulently obtain funds from Plaintiffs, which the Defendants used to fund On Time Auto's loan accounts, then illegally converted profits pledged to Plaintiffs from insurance payoffs, repossessions, and the sales or transfers of vehicles to third parties. The allegations continue that Defendants remained in control of the fraudulent scheme and camouflaged those illegal activities from Plaintiffs by creating false documents, operating a sophisticated shell game, and using multiple individual companies as members of the RICO enterprise not limited to the third-party companies named in the complaint. Throughout the complaint, Plaintiffs repeatedly alleged that Defendants executed these fraudulent

and illegal activities by using U.S. mails, telephones, and electronic communications with the specific intent to defraud and steal from numerous victims, including Plaintiffs, and thus, the scope, magnitude, number, and pattern elevated these activities from garden variety fraud and breach of contract claims to a pattern of racketeering activity under RICO. Plaintiffs' RICO claim identified some, but not all, named defendants. The last seventeen paragraphs of the complaint endeavored to set out the elements of their RICO claim.

The district court found Plaintiffs failed to properly plead the RICO elements of an enterprise, a pattern of racketeering activity, and at least two predicate acts committed by each defendant. We agree.

### 1. RICO Enterprise

A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 129 S. Ct. 2237, 2244 (2009); see also United States v. Lee, 374 F.3d 637, 647 (8th Cir. 2004) ("Three elements must be proven to show that a RICO enterprise existed: (1) a common purpose that animates the individuals associated with it; (2) an ongoing organization with members who function as a continuing unit; and (3) an ascertainable structure distinct from the conduct of a pattern of racketeering." (citing United States v. Kragness, 830 F.2d 842, 855 (8th Cir. 1987)). "[T]he existence of an enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.'" Boyle, 129 S. Ct. at 2245 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)). In deciding whether an alleged RICO enterprise has an ascertainable structure distinct from the pattern of racketeering activity, we

must "determine if the enterprise would still exist were the predicate acts removed from the equation." Handeen v. Lemaire, 112 F.3d 1339, 1352 (8th Cir. 1997).

In framing their RICO claim, Plaintiffs alleged that "[t]he web of inter-related [sic] companies and businesses described [in the complaint] constitutes an 'enterprise' within the meaning of 18 U.S.C. § 1961(4)," because "[e]ach of the Defendants identified in this complaint was employed by, or associated with, or participated in, such RICO enterprise" and that "[t]he enterprise formed, operated and perpetrated by Defendants affected U.S. interstate commerce." Compl. ¶¶ 87-88.

In Stephens, Inc. v. Geldermann, Inc., 962 F.2d 808, 815-16 (8th Cir. 1992), we held that similar allegations in the complaint were insufficient to plead a RICO enterprise because "[t]he only common factor that linked" the individually named defendants "and defined them as a distinct group was their direct or indirect participation" in the engineered investment scheme to defraud the plaintiff. We observed that while "each member of th[e] group carried on other legitimate activities, these activities were not in furtherance of the common or shared purpose of the enterprise and, thus, were not acts of the enterprise." Id. at 816. Accordingly, we concluded that the plaintiff "failed to prove the existence of an enterprise that extended beyond the minimal association surrounding the pattern of racketeering activity." Id.; accord Rao v. BP Prods. N. Am., Inc., 589 F.3d 389, 399-400 (7th Cir. 2009) (concluding the complaint that named different actors for different events and did not indicate how those different actors were associated did not "suggest a group of persons acting together for a common purpose or course of conduct" as required to state a RICO claim).

To demonstrate an association among the Defendants, Plaintiffs, relying on facts not in the complaint, make bare assertions that because Larry and Connie Myers and Buddy W. Taylor loaned the Harts money to establish On Time Auto, they were not just lenders but owners that controlled the RICO enterprise; and by providing the

Harts the financial resources that allowed On Time Auto to continue, Harvey and Hilda Chaddock became financial backers of the racketeering enterprise. While we will not consider assertions that were not before the district court, see C.N. v. Willmar Public School, Independent School District No. 347, 591 F.3d 624, 629 n.4 (8th Cir. 2010) (granting appellees' motion to strike documents, facts, and arguments presented for the first time on appeal), we note that these assertions are more of the same conclusory allegations that altogether fail to establish how the Defendants are associated with each other or the RICO enterprise. See Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1028 (8th Cir. 2008) (affirming the dismissal of the plaintiff's RICO claim reasoning that "Plaintiffs failed to allege sufficient facts to demonstrate [the defendant] and each of the three [other members of the enterprise] had a 'common purpose of engaging in a course of conduct'" (quoting Turkette, 452 U.S. at 583)).

### 2.      Pattern of Racketeering

Assuming, *arguendo,* Plaintiffs had demonstrated a RICO enterprise, Plaintiffs' RICO claim is fatally flawed because it does not state a pattern of racketeering. See id. at 1028 (holding that failure to show evidence of "any one element of a RICO claim means the entire claim fails"); accord Gamboa, 457 F.3d at 705 ("[Plaintiffs] 'must . . . allege each of these [RICO] elements to state a claim.'" (second alteration in original) (quoting Sedima, 473 U.S. at 496)).

"To constitute racketeering activity under RICO, the predicate acts must be related . . . ." Dahlgren, 533 F.3d at 689. "A pattern is shown through two or more related acts of racketeering activity that 'amount to or pose a threat of continued criminal activity.'" Nitro Distrib., 565 F.3d at 428 (quoting Wisdom v. First Midwest Bank, of Poplar Bluff, 167 F.3d 402, 406 (8th Cir. 1999)). "To satisfy the RICO continuity element, therefore, a plaintiff must provide evidence of multiple predicate acts occurring over a substantial period of time (closed-end continuity) or evidence that the alleged predicate acts threaten to extend into the future (open-ended con-

-11-

tinuity).” Craig Outdoor, 528 F.3d at 1028. “Closed-ended continuity involves ‘a series of related predicates extending over a substantial period of time;’ open-ended continuity involves acts which, by their nature, threaten repetition into the future.” Wisdom, 167 F.3d at 407 (quoting H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 241-42 (1989)). “Though mail fraud can be a predicate act, mailings are insufficient to establish the continuity factor unless they contain misrepresentations themselves.” Dahlgren, 533 F.3d at 689 (quoting Wisdom, 167 F.3d at 407).

Plaintiffs alleged that Defendants’ wrongful acts constituted a “‘pattern of racketeering activity’ within the meaning of 18 U.S.C. § 1961(1)(B)” and “18 U.S.C. § 1961(5),” that included “wire fraud in violation of 18 U.S.C. § 1343, mail fraud in violation of 18 U.S.C. § 1341 and violations changeable [sic] under [Missouri] law as further defined in 18 U.S.C. § 1961(1) including but not limited to robbery, fraud and stealing in violation of [Missouri law].” Compl. ¶¶ 89-91. Plaintiffs argue the district court failed to “recognize the true nature of the Defendants’ long term threat not only to Plaintiffs but as to the multiple victims over a significant period of time” and that “Plaintiffs and other financial institutions were victims of Defendants’ on-going ‘open ended’ fraudulent scheme to obtain funds from [Plaintiffs] and third party financial companies.” Pls.’ Br. 30.

In their complaint, Plaintiffs merely suggest that at indefinite times, in non-descript ways, and for unidentified purposes, some, but not all Defendants provided On Time Auto with funds or services. The allegations omit some of the named Defendants altogether. Due to the vagueness of these allegations, it is unclear whether the business relationships between On Time Auto and the named Defendants differed from Plaintiffs’ business relationships with On Time Auto. While the complaint is awash in phrases such as “ongoing scheme,” “pattern of racketeering,” and “participation in a fraudulent scheme,” without more, such phrases are insufficient to form the basis of a RICO claim. See, e.g., Gallagher v. Magner, 619 F.3d 823, 842 (8th Cir. 2010) (concluding that general allegation of cooperation amongst the

-12-

defendants and the use of phrases such as "buy in" were insufficient to formulate a RICO claim).  The additional factual allegations contained in the proposed amended complaint do not change this outcome; the amendments bear the same lack of specificity that plague the original complaint.  Accord Rao, 589 F.3d at 399-400 (holding that the dismissal of a RICO claim was appropriate where "the elements of the RICO claims were set forth in boilerplate fashion" and the plaintiff's proposed amended complaint "would not detail all of the RICO counts' pleading deficiencies").

Citing Handeen v. Lemaire, 112 F.3d at 1352, Plaintiffs assert that "On Time Auto, its alias and alter egos were continuing 'opened-ended' enterprises under RICO with a common and shared purpose."  Pls.' Br. 29.  In Handeen, we reversed the dismissal of a RICO claim brought by Paul Handeen (Handeen) against Gregory Lemaire (Lemaire), and the law firm (the Firm) representing Lemaire.  Handeen, 112 F.3d at 1343-44.  The genesis of the lawsuit was a scheme to discharge Handeen's civil judgment against Lemaire through Lemaire's bankruptcy proceeding.  Id. at 1343-44.  In his complaint, Handeen alleged that the Firm and Lemaire violated the RICO Act by conducting an enterprise (the bankruptcy estate) through a pattern of racketeering activity, which included the execution of an intricate scheme to "fraudulently obtain a discharge of Handeen's judgment by manipulating the bankruptcy system."  Id. at 1343-44.  We observed that even after Lemaire's bankruptcy plan was approved and his debt discharged, the pattern of racketeering continued as Lemaire and the Firm executed another scheme to conceal from the bankruptcy trustee Lemaire's subsequently increased income.  Id. at 1344.  In concluding Handeen met his burden of stating a RICO claim sufficient to survive dismissal, we noted that the enterprise "had an ongoing structure independent from the predicate acts of racketeering, and there [wa]s little chance that the [bankruptcy] estate might have impermissibly been equated with those nefarious deeds."  Id. at 1352.

The complaint in Handeen is readily distinguished from the complaint in the present case.  In Handeen, the complaint alleged a pattern of racketeering activity that

-13-

began in January 1987 and continued to 1990, and detailed that the scheme to defraud the bankruptcy court included the Firm advising Lemaire to inflate the amount of his debts, to execute false promissory notes payable to his parents, and to list his parents as creditors on the schedule filed with the bankruptcy court. Id. at 1343-44. The complaint went on to detail how Lemaire, as instructed by the Firm, used the U.S. mails to perpetrate the ongoing fraudulent scheme by having mail sent to the bankruptcy trustee through his parents' address in Minneapolis to prevent the bankruptcy trustee from discovering that Lemaire had taken a higher paying job in Houston. Id. at 1344.

No such details are provided in the present complaint. Rather, Plaintiffs circularly argue Defendants committed mail fraud by sending documents and funds through the U.S. mails in managing On Time Auto's loan accounts and committed wire fraud "by participating in a scheme to defraud by using electronic wire carriers, or knowingly causing the use of electronic wire carriers, to effectuate the scheme, as fully set forth" in previous paragraphs. Compl. ¶ 92. Considered in its entirety, however, the complaint presumes rather than details any use of the U.S. mails or electronic wire carrier in perpetrating the alleged scheme. When facing a motion to dismiss, threadbare recitations of the elements of a RICO claim, "supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.

The complaint also fails to satisfy the continuity element alleging a scheme that began in December 2003 and continued until June 2004, a period of less than seven months. We have held that closed-ended continuity "can be shown by related acts continuing over a period of time lasting at least one year . . . ." United States v. Hively, 437 F.3d 752, 761 (8th Cir. 2006) (citing Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp., 986 F.2d 1208, 1215 (8th Cir. 1993)). The scheme allegedly lasted less than seven months, which is legally insufficient "to constitute the requisite pattern of racketeering activity." Primary Care, 986 F.2d at 1215 (holding that a scheme lasting ten or eleven months was not legally sufficient to constitute a pattern

of racketeering); see also Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank, 934 F.2d 976, 981 (8th Cir. 1991) ("[T]his case involves, at most, a plan to defraud a single company in connection with a single set of loan agreements. . . . [A] single transaction which involves only one victim and takes place over a short period of time does not constitute the pattern of racketeering required for long-term criminal activity under a RICO claim."). We reject Plaintiffs' conclusory assertion that Defendants' activities constituted an open-ended fraudulent scheme because the "true nature of the Defendants' long term threat [was] not only [as] to Plaintiffs but as to the multiple victims over a significant period of time." Pls.' Br. 30. See Craig Outdoor, 528 F.3d at 1028 ("A plaintiff may establish open-ended continuity by showing that the predicate acts themselves involve a distinct threat of long-term racketeering activity or that the predicate acts constitute a regular way of conducting an ongoing legitimate business or a RICO enterprise."). Plaintiffs have failed to allege a scheme that is legally sufficient to constitute a pattern of racketeering.

### a. Two Predicate Acts

We also note that Plaintiffs' RICO claim is fatally flawed because the complaint fails to adequately specify the predicate acts. We agree with the district court that while the complaint contains "various and sundry boilerplate allegations, . . . such allegations fail to meet the requirement of identifying two specific predicate acts for each Defendant." Crest Constr., 2010 WL 3456690, at *4; see Craig Outdoor, 528 F.3d at 1027 ("The requirements of § 1962(c) must be established as to each individual defendant.").

### b. Failure to Properly Plead Mail and Wire Fraud

Finally, we note that Plaintiffs' failure to meet the heightened pleading requirements of Rule 9(b) in alleging mail and wire fraud also provided an independent basis for dismissal. See Nitro Distrib., 565 F.3d at 428-29 (noting that the plaintiff's RICO claim was properly dismissed for failure to set forth the predicate acts of mail and wire fraud with particularity required under Rule 9(b) where the complaint "allege[d] in

very general terms that [the defendant] engaged in racketeering that 'involved the use of the interstate telephone and the U.S. mails on a number of occasions'"). As the district court observed in the present case:

> The Complaint does not identify [the who, what, when, where, and how] with respect to a single allegation of mail or wire fraud; in fact the Complaint fails to specify a single date with respect to any such allegation. The proposed additions are better but still lacking with respect to specifically identifying the who, where, when and how of the mail and wire fraud, the predicate acts of the RICO claim, . . . .

Crest Constr., 2010 WL 3456690, at *5.

Because the complaint failed to allege facts sufficient to "state a claim to relief that is plausible on its face," Walker, 650 F.3d at 1203, we affirm the dismissal of Plaintiffs' RICO claim.

### 3. Denial of Motion to Amend Complaint

Federal Rule of Civil Procedure 15(a) provides that a court should grant leave to amend freely "when justice so requires." "However, denial of leave to amend may be justified by undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 557-58 (8th Cir. 2006) (internal quotation marks omitted). Generally, we review the denial of leave to amend a complaint under an abuse of discretion standard; however, "when the district court bases its denial on the futility of the proposed amendments, we review the underlying legal conclusions de novo." Walker, 650 F.3d at 1210 (internal quotation marks omitted).

The district court did not err in declining to allow Plaintiffs' motion to amend. Over the course of the litigation, the district court three times granted Plaintiffs' requests to amend the scheduling order. Each amendment extended the deadline for

filing amended pleadings, yet Plaintiffs never moved to amend their complaint. On February 23, 2010, after Defendants secured new counsel as ordered by the district court, the scheduling order was once again amended with the admonition that absent extraordinary circumstances no further amendments or extensions would be granted. The district court set the amended pleadings deadline for March 12, 2010. Three months later, Defendants filed their motion to dismiss. Another two months passed before Plaintiffs moved to amend their complaint. Plaintiffs provided no explanation for this delay or why the amended complaint could not have been filed any earlier. More importantly, as the district court noted, in considering Plaintiffs' amended complaint, the additional factual allegation made therein did not cure the previously discussed fatal flaws. We find no error in the district court's denial of the motion to amend.

### 4. Dismissal of State Law Claims

"[A] federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. See [28 U.S.C.] §§ 1367 (a), (c). A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc., 129 S. Ct. 1862, 1866 (2009). Because the decision to exercise supplemental jurisdiction over the remaining state law claims is discretionary under § 1367 and not jurisdictional, our review is for an abuse of discretion. Id.; see also Glorvigen v. Cirrus Design Corp., 581 F.3d 737, 743 (8th Cir. 2009) ("We review the district court's decision not to exercise supplemental jurisdiction over the remaining state-law claims for an abuse of discretion.").

After the dismissal of the RICO count, the only count over which the district court had original jurisdiction, the district court declined to exercise supplemental jurisdiction over the remaining state law claims. In so declining, the district court noted that Defendants had requested that the district count decline to exercise supplemental jurisdiction and that Plaintiffs had "not objected or otherwise responded

to [Defendants'] suggestion." <u>Crest Constr.</u>, 2010 WL 3456690, at *6. The district court is afforded broad discretion in determining whether to exercise supplemental jurisdiction. <u>Green v. Ameritrade, Inc.</u>, 279 F.3d 590, 599 (8th Cir. 2002). We cannot say that the district court abused that discretion. <u>See</u> <u>Murray v. Lene</u>, 595 F.3d 868, 870 (8th Cir. 2010) (concluding that after finding the plaintiff's complaint failed to make out a federal claim, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the remaining state law claims).

## III.  CONCLUSION

For the foregoing reasons, we affirm.

_____