# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2811

_____

H & Q Properties, Inc., a Nebraska corporation; John Quandahl; Mark Houlton

*Plaintiffs - Appellants*

v.

David E. Doll; Double D Properties, L.L.C., a Nebraska limited liability company; DDE, Inc., a Nebraska corporation formerly known as Double D Excavating, Inc.; HNGC, Inc., a Nebraska corporation formerly known as Dougle D Hook-N-Go Containers, Inc.; Nebraska Lowboy Services, Inc., a Nebraska corporation; Double D Excavating, Inc., an Iowa corporation; Load Rite Excavating, L.L.C., a Nebraska limited liability company formerly known as Down Dirty, L.L.C.; Doll Construction, L.L.C., a Nebraska limited liability company; New Era Excavation Company, a Nebraska corporation; Malvern Trust & Savings Bank, an Iowa state-chartered bank

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 14, 2015
Filed: July 15, 2015

_____

Before WOLLMAN, SMITH, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Appellants H & Q Properties, Inc., John Quandahl, and Mark Houlton (collectively, "H&Q") appeal the district court's[1] dismissal of their claims and denial of their motion for leave to file a second amended complaint alleging violations of both state law and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, against appellees. We affirm.

## I. *Background*[2]

H & Q Properties, Inc. and appellees Double D Properties, L.L.C.; DDE, Inc.; and HNGC, Inc. owned membership units of Double D Excavating, L.L.C. (the "LLC").[3] On March 2, 2010, certain appellees (collectively, the "Doll Companies"[4]) opened account number 121224 ("Account 121224") at Malvern Trust & Savings Bank ("Malvern Bank") in the name of "Double D Excavating" and deposited into that account a check made payable to the LLC. That same day, the Doll Companies also opened account number 119992 ("Account 119992") at Malvern Bank in the name of "David E. Doll."

In the coming weeks, the Doll Companies deposited into Account 121224 multiple payments that the LLC's customers made to the LLC. The Doll Companies thereafter transferred funds from Account 121224 to Account 119992, commingled

---

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

[2]The following summary of material facts is derived from H&Q's amended complaint. We assume these facts are true for purposes of this appeal. *Rochling v. Dep't of Veterans Affairs*, 725 F.3d 927, 930 (8th Cir. 2013) (citation omitted).

[3]The LLC was formerly known as Doll Excavating, L.L.C.

[4]The "Doll Companies" include appellees David E. Doll; Double D Properties, L.L.C.; DDE, Inc.; HNGC, Inc.; Nebraska Lowboy Services, Inc.; Double D Excavating, Inc.; and Load Rite Excavating, L.L.C.

funds from Account 119992 with funds belonging to the Doll Companies, and used those funds to pay certain of the Doll Companies' own expenses.

H&Q asserts that the Doll Companies failed to give notice or obtain consent for any of the foregoing activities, which H&Q deems actionable. In addition, the Doll Companies allegedly represented to H&Q that the LLC was struggling financially and needed additional financial assistance from H&Q. The Doll Companies contributed a portion of the funds from Account 119992 back to the LLC and, according to H&Q, represented to H&Q that these were fresh capital contributions to the LLC. Thereafter, H&Q also invested additional capital into the LLC.

After discovering the Doll Companies' alleged conduct, H&Q filed this suit asserting various state law and RICO claims against the Doll Companies, two entities associated with the Doll Companies (Doll Construction, L.L.C. and New Era Excavation Company), and Malvern Bank. The appellees moved to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6), and H&Q then moved for leave to file a second amended complaint.

The district court ultimately granted the appellees' motions to dismiss and denied H&Q's motion for leave to amend. The court found, among other things, that H&Q failed to state a RICO claim because it did not sufficiently allege any racketeering activity. The court also denied H&Q's motion to file a second amended complaint because the proffered complaint would not cure the existing pleading deficiencies. The court chose not to exercise supplemental jurisdiction over the remaining state law claims and dismissed them without prejudice.

II. *Discussion*

On appeal, H&Q argues that the court erred in dismissing its RICO claims and likewise erred in denying its motion for leave to amend. "We review a grant of a motion to dismiss under a de novo standard of review." *Grand River Enters. Six*

*Nations, Ltd. v. Beebe*, 574 F.3d 929, 935 (8th Cir. 2009) (citing *Taxi Connection v. Dakota, Minn. & E. R.R. Corp.*, 513 F.3d 823, 825 (8th Cir. 2008)). "Generally, we review the denial of leave to amend a complaint under an abuse of discretion standard; however, 'when the district court bases its denial on the futility of the proposed amendments, we review the underlying legal conclusions de novo.'" *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (quoting *Walker v. Barrett*, 650 F.3d 1198, 1210 (8th Cir. 2011)).

## A. *RICO*

RICO prohibits "any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). RICO, however, "'does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'" *Doe*, 660 F.3d at 353 (quoting *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)). To establish their civil claim under RICO, H&Q must show that the appellees engaged in "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009) (quoting *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Additionally, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud." The "[c]ircumstances" of the fraud include "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995) (quoting *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982)).

H&Q contends that the appellees engaged in "a pattern of racketeering activity" by committing bank fraud, mail fraud, and wire fraud. For the reasons discussed herein, we disagree.

-4-

### 1. *Bank Fraud*

To commit bank fraud, a person must "execute[], or attempt[] to execute, a scheme or artifice" either "(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344. "[T]he purpose of the bank fraud statute 'is not to protect people who write checks to con artists but to protect the federal government's interest as an insurer of financial institutions.'" *United States v. Staples*, 435 F.3d 860, 867 (8th Cir. 2006) (quoting *United States v. Davis*, 989 F.2d 244, 247 (7th Cir. 1993)); *see also Loughrin v. United States*, ⸺ U.S. ⸺, 134 S. Ct. 2384, 2394–95 (2014) ("[T]he text of § 1344(2) [] limits its scope to deceptions that have some real connection to a federally insured bank, and thus implicate the pertinent federal interest." (citation omitted)).

H&Q has failed to allege that any appellee defrauded Malvern Bank. And H&Q has likewise failed to sufficiently allege that any appellee engaged in the requisite "false or fraudulent" activities to obtain bank property within the meaning of § 1344(2). The mere use of a bank's traditional customer services does not per se transform the appellees' alleged misconduct into bank fraud; indeed, even assuming arguendo that H&Q has sufficiently pleaded *some* kind of fraud, § 1344(2) is not "a plenary ban on fraud" and does not "federaliz[e] frauds that are only tangentially related to the banking system." *Loughrin*, 134 S. Ct. at 2392–93 (also noting that § 1344(2) should not be applied "to cover every pedestrian swindle happening to involve payment by check"). The district court therefore did not err in finding that H&Q failed to adequately allege bank fraud.

### 2. *Mail and Wire Fraud*

"When pled as RICO predicate acts, mail and wire fraud require a showing of: (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the

scheme." *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 406 (8th Cir. 1999) (citing *Murr Plumbing, Inc.*, 48 F.3d at 1069 n.6). "[T]he term 'scheme to defraud' connotes some degree of planning by the perpetrator, [and] it is essential that the evidence show the defendant entertained an intent to defraud." *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 991 (8th Cir. 1989) (alterations in original) (quoting *United States v. McNeive*, 536 F.2d 1245, 1247 (8th Cir. 1976)).

As the district court correctly noted:

> [H&Q has] not alleged that their authorization was required for creation of LLC accounts, or that such authorization was required for the transfer [of] money from accounts belonging to the LLC. [H&Q's] allegations are also devoid of any suggestion that [the Doll Companies] attempted to conceal the existence of either account from [H&Q]. In fact, according to [H&Q], [the Doll Companies] specifically revealed both accounts, at the latest, in August of 2011. . . . In sum, there are no allegations from which the Court can infer that [the Doll Companies] fraudulently sought to deprive [H&Q] of any right to the customer payments, or that [the Doll Companies] lacked any right to the customer payments transferred to Account No. 119992. Thus, the Court cannot conclude that [the Doll Companies'] representations were false or part of a fraudulent scheme.

Consequently, even assuming the Doll Companies used "mail or wires" to deposit checks or transfer funds, H&Q's allegations fall woefully short of establishing mail or wire fraud. *See id.* Thus, although certain of the appellees' alleged actions may give rise to various state-law claims, they do not constitute racketeering activity within the meaning of RICO.[5]

---

[5]Given that H&Q has failed to adequately plead racketeering activity, we need not address the district court's other reasons for dismissing H&Q's RICO claims. *See Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1002 (8th Cir. 2011) ("[T]his court may affirm for any reason supported in the record." (citation omitted)).

B. *Leave to Amend*

Federal Rule of Civil Procedure 15(a) provides that "court[s] should freely give leave [to amend a complaint] when justice so requires." Courts need *not* grant leave to amend, however, if granting such leave would be futile. *Doe*, 660 F.3d at 358–59. And, after reviewing H&Q's proposed second amended complaint, we agree with the district court that H&Q's proposed amendments do not cure the above-described deficiencies present in their RICO allegations. The district court therefore did not err in denying H&Q's motion for leave. *See id.*

III. *Conclusion*

Accordingly, we affirm the decision of the district court.

_____